ESTATE OF PETERSON: MILWAUKEE COUNTY, Appellant, v. WALTHER, Personal Representative, Respondent.

*No. 430. Argued January 7, 1975.—Decided February 4, 1975.*
(Also reported in 225 N. W. 2d 644.)

For the appellant there was a brief by *Robert P. Russell*, Milwaukee county corporation counsel, and *James T. McClutchy*, assistant corporation counsel, and oral argument by *Mr. McClutchy*.

For the respondent there was a brief by *David L. Walther*, attorney pro se, and *Lester J. Dencker* of counsel, both of Milwaukee, and oral argument by *Mr. Walther*.

CONNOR T. HANSEN, J.    Aid to dependent children was granted to the Mildred Marie Peterson family by Milwaukee county between March, 1961, and August, 1965. She died June 30, 1970. Her will was admitted to probate, and the claim which produces this litigation was filed by the county against her estate. The personal representative objected to its allowance.

The objection to the claim is founded upon the proposition that the statute authorizes the county to recover funds for aid which it granted prior to the enabling statutory enactment.

Sec. 49.195, Stats., was created by ch. 154, sec. 164qm, Laws of 1969, effective August 31, 1969. The pertinent provisions of the statute are:

"**49.195 Recovery of aid to families with dependent children.**
"   . . .
"(2) Amounts may be recovered pursuant to this section for aid granted *both prior to and* after August 31, 1969; and any amounts so recovered shall be paid to the United States, this state and its political subdivisions in the proportion in which they contributed to the payment of the aid granted, in the same manner as amounts recovered for old-age assistance are paid." (Emphasis added.)

The issue presented is whether the provisions of sec. 49.195, Stats., which permit a county to recover amounts which were paid in aid to families with dependent children prior to the effective date of that section, violates the due process requirements of the United States and Wisconsin Constitutions? [1]

It has been said many times that the party challenging the act has the burden of establishing unconstitutionality beyond a reasonable doubt. *State ex rel. Hammermill Paper Co. v. La Plante* (1973), 58 Wis. 2d 32, 205 N. W. 2d 784. We agree with the finding of the trial court that the respondent has met this burden.

The trial court also found on good authority,[2] that the retroactive provision of the statute made it constitutionally infirm because the statute created a new right as against the recipient of the aid or his estate which was not existent at the time the aid was received. On appeal, the county recognizes that the creation of a new right

[1] Art. I, sec. 1 of the Wisconsin Constitution provides:

"**Equality; inherent rights.** SECTION 1. All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

Amendment XIV of the United States Constitution provides in part:

"Section 1. . . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; . . ."

[2] The trial court relied on the following cases which have followed the rule that statutes affecting substantive rights should not be construed to apply retroactively or if expressly retroactive, violate due process: *Holzem v. Mueller* (1972), 54 Wis. 2d 388, 195 N. W. 2d 635; *Haase v. Sawicki* (1963), 20 Wis. 2d 308, 121 N. W. 2d 876; *Estate of Riley* (1959), 6 Wis. 2d 29, 94 N. W. 2d 233; *Miller v. Department of Taxation* (1942), 241 Wis. 615, 6 N. W. 2d 827; *Home Owners' Loan Corp. v. Robinson* (1939), 231 Wis. 248, 285 N. W. 768.

in the county to recover the welfare payments retroactively would be unconstitutional, but contends that the present statute is not unconstitutional for two reasons: (1) The heirs of the estate have no vested right that is constitutionally protected, and (2) there was a pre-existing right in the county to recover the welfare payments. We do not find either of these arguments persuasive.

It is not the heirs of the welfare recipient who seek to defeat the county's claim, it is the personal representative of the estate. The personal representative is vested with the title to all property of the decedent. Sec. 857.01, Stats. The powers and duties of the personal representative are expressly provided by statute to include the duty to "contest all claims except claims which he believes are valid." Sec. 857.03. It is generally recognized in this state that, in contesting claims against the estate, the personal representative can rely on the defenses and rights that would have been available to the decedent had she lived.[3]

The appellant calls this court's attention to the case of *Estate of Nieman* (1939), 230 Wis. 23, 283 N. W. 452. That case involved a claim that Wisconsin's inheritance tax, in that it did not provide for a credit for the federal estate tax, was violative of equal protection. That case is not in point as there the claim was raised by the heirs. Further, this court merely held that the tax was a tax on the transfer and not on the amount of property re-

[3] *See, e.g., Estate of Detjen* (1967), 34 Wis. 2d 46, 148 N. W. 2d 745 (claim against estate for medical and support payments for decedent made by a friend was defeated by personal representative where circumstances at time payments were made did not support an implied promise of repayment); *Estate of Andrus* (1922), 178 Wis. 358, 190 N. W. 83. *See also: Estate of Koch* (1912), 148 Wis. 548, 571, 134 N. W. 663: ". . . The only necessary party adverse to the claimant was the personal representative. All interested in the estate, in the collective sense, really the estate itself, vitalized by such representative, was the only adverse party to the claimant in the matter of the hearing on claims, . . ."

ceived; there being a concurrent right in the state and federal governments to tax the transfer, there was no constitutional right violated in failing to provide for a credit. *Nieman* cannot be cited for the proposition that heirs have no legal rights in an inheritance provided by a will which has been admitted into probate.

The personal representative stands in the shoes of the decedent as to defenses to the claim of the appellant. As the holder of legal title to the assets of the estate, the personal representative has the standing to bring a constitutional challenge against the statute upon which the claim of the appellant is based.

As we understand the second argument advanced by the county, they acknowledge that no statutory right of recovery existed prior to the effective date of sec. 49.195, Stats., but nevertheless claim a pre-existing or common-law right of recovery.

Under the common law, parents had and have a legal obligation to support and maintain their minor children under certain circumstances.[4] However, we find no authority for the proposition that a municipality or government has a corresponding common-law duty to provide support and maintenance. Nor do we find authority for the proposition that the common law required a parent to repay the support and maintenance provided by a municipality or government pursuant to a statute.

In *Mc Goon v. Irvin, supra,* footnote 4, this court held that when a parent permits a stranger to maintain and support his minor child, the law will presume that he knows his obligations, accepts the services and assumes to pay. The appellant argues from this that the county is analogous to the private individual who proffers the aid for which the parents are primarily liable. Hence,

---

[4] *See, e.g., Mc Goon v. Irvin* (1845), 1 Wis. (Pin.) 526, 44 A. D. 409. *See also: Thoreson v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 231, 201 N. W. 2d 745 (primary responsibility is on father; failing his support the obligation falls to the mother).

it is argued the common law presumes that the parent agrees to repay the county for the aid rendered and, therefore, the recovery provided by sec. 49.195, Stats., is not a new right but merely a means of effectuating collection.[5]

The *Mc Goon Case* has been distinguished by subsequent decisions of this court as a case in which special circumstances surrounding the giving of the services raised a presumption of parental agreement to repay. *See: Judge v. Barrows* (1883), 59 Wis. 115, 17 N. W. 540. The general rule is that a parent is liable for necessaries furnished minor children only upon express promise or proof of circumstances from which a promise may be implied. *Hoard v. Gilbert* (1931), 205 Wis. 557, 238 N. W. 371; *Zilley v. Dunwiddie* (1898), 98 Wis. 428, 74 N. W. 126; *Judge v. Barrows, supra.*

By reference to the common-law requirement that a parent is legally responsible for the support of his minor children, the appellant attempts to distinguish the result reached by this court in *Saxville v. Bartlett* (1906), 126 Wis. 655, 105 N. W. 1052, and *State Department of Public Welfare v. Shirley* (1943), 243 Wis. 276, 10 N. W. 2d 215.

In *Saxville, supra,* this court held that a town could not recover from a son the amount paid by the town for the father's support, care and medical attendance. In so holding, this court noted that the common law did not make a son liable for the support of his father. While a statute did make the son liable *prospectively,* if ordered by a court, the town could not avail itself of that liability as it was based exclusively upon statute and the town had not sought the statutory remedy before extending the aid to the father.

---

[5] Contrary to appellant's contention, in the analogous case of *Estate of Pelishek* (1934), 216 Wis. 176, 256 N. W. 700, this court held that sec. 49.10, Stats. 1933, also a recovery statute, was substantive and created a cause of action in favor of the public.

The argument that *Saxville, supra,* might have been differently decided had there been a common-law duty for the son to support his father, was substantially rejected by the subsequent case of *Shirley, supra.* In that case the state advanced much the same argument which the appellant makes here. The recovery sought in *Shirley, supra,* was against the parents of an insane child for the expenses incurred by the state while the child was committed to a state school. In rejecting the argument of the state in that case, this court noted that there was no common-law precedent for the position that the state or its municipalities were charged with the duty of supporting the poor, insane or incompetent; the duty in that respect was wholly statutory. Thus it was noted that in the absence of statutory authority, there could be no recovery, the reason being that the relief furnished was regarded as a charity.[6] This statement of the law by the court in *Shirley* was consistent with the general rule of implied-in-fact contracts that a promise to pay upon the rendition of services by a third party will not be implied if the services were rendered with no expectation of payment as where they are rendered from motives of friendliness, neighborliness, kindliness or charity.[7]

The cases of *Saxville* and *Shirley* establish at least two requirements in regard to the existence of a common-law right of recovery. The first, concededly met here, is that the person (mother) sought to be held liable must have had a common-law liability for the support of the ulti-

---

[6] *State Department of Public Welfare v. Shirley, supra,* pages 289–291. While *Estate of Cameron* (1946), 249 Wis. 531, 25 N. W. 2d 504, expressly overruled several statutory constructions arrived at in *Shirley, Cameron* left no doubt as to the correctness of the *Shirley* decision in this regard, when the court stated at page 542: ". . . This does not affect the correctness of the result in the *Shirley Case* for the reason that there the action was based upon a common-law liability which clearly did not exist. . . ."

[7] *See, e.g., Estate of Detjen, supra; Gugel v. Olin* (1919), 168 Wis. 321, 170 N. W. 261; 66 Am. Jur. 2d, *Restitution and Implied Contracts,* pp. 970, 971, sec. 26; *Annot.* 54 A. L. R. 548.

mate recipient of the aid. The second requirement is that the aid (by the county) must not have been given gratuitously, *i.e.*, under circumstances which do not raise an implied promise of repayment. It is the second requirement, decided adversely to the state in *Shirley*, which is also dispositive of this appellant's claim that a common-law right of recovery of the aid existed. There was no common-law liability on the part of Mildred Marie Peterson to reimburse the county for the aid which she received.

The inclusion of the words "both prior to and" in sec. 49.195, Stats., is a legislative attempt to authorize recovery of aid granted prior to the effective date of the statute. The enactment creates a new right of recovery in a municipality by retroactively imposing a new liability on the aid recipient. The new right of recovery and the corresponding liability, as retroactively applied, deprives the recipient, in the instant case her estate, of property without due process of law.

The words "both prior to and" as contained in sec. 49.195 (2), Stats., constitute an unconstitutional enactment and are therefore stricken from the statute. Since the words found to be unconstitutional are severable,[8] sec. 49.195 (2) would read:

"(2) Amounts may be recovered pursuant to this section for aid granted after August 31, 1969; and any amounts so recovered shall be paid to the United States, this state and its political subdivisions in the proportion in which they contributed to the payment of the aid granted, in the same manner as amounts recovered for old-age assistance are paid."

*By the Court.*—Order affirmed.

---

[8] Sec. 990.001 (11), Stats., *Allison v. State* (1974), 62 Wis. 2d 14, 30, 214 N. W. 2d 437.