WILL OF ROBINSON : HENNEMAN, Administrator, Appellant, vs. ROBINSON, Executrix, Respondent.

*April 30—June 24, 1935.*

598

For the appellant there was a brief by *W. H. Stafford, Harold E. Stafford,* and *W. M. Bowe,* all of Chippewa Falls, and oral argument by *Harold E. Stafford.*

*Clarence E. Rinehard* of Chippewa Falls, for the respondent.

ROSENBERRY, C. J.  A determination of the questions involved here requires consideration of the duties of an executor and the nature of an action for *devastavit.*  In *Coolidge v. Rueth,* 209 Wis. 458, 245 N. W. 186, we gave consideration to the duties of an administrator under somewhat analogous conditions.  However, the duties imposed by statute upon an administrator differ somewhat from those imposed upon an executor.

Sec. 310.13, Stats., provides that, when any will shall be admitted to probate, the court shall grant letters testamentary and that—

"such estate, after the payment of the just debts and expenses of administration, shall be disposed of according to such will, so far as such will may operate upon it. . . ."

Sec. 310.14 prescribes the conditions of the bond which every executor is required to give unless an executor is exempt therefrom by reason of provisions contained in the will pursuant to sec. 310.15.

Sec. 312.01 provides that every executor and administrator shall, within three months after his appointment, make and return into the county court a true inventory of all the property of his decedent, which shall come to his possession or knowledge and which shall be verified in accordance with the provisions of sec. 312.03.

By the provisions of sec. 312.04, the executor has a right to the possession of the real estate and the rents and profits therefrom except the exempt homestead. The proof and payment of claims against the estate are provided for by ch. 313, Stats.

An order appointing appraisers was entered April 9, 1924, and on the same day an order was made and subsequently published requiring creditors to present their claims against the estate of Peter Robinson on or before the 9th day of August, 1924, and providing that the same should be examined and adjusted on the 2d day of September, 1924. Claims amounting to $67,884.30 were filed as appears from the judgment on claims. The claims are not included in the record and date of filing is not disclosed. These claims were finally allowed September 26, 1934, at $15,492.88.

Sec. 313.05 provides:

"When a creditor against whom the deceased had claims shall present a claim to the county court the executor or administrator shall exhibit the claims of the deceased in offset to the claims of the creditor. . . ."

Sec. 313.06, Stats. 1925, provided that, at the expiration of the time limited for creditors to present their claims or as soon thereafter as practicable, the court shall in writing make a statement embracing lists of the claims presented against the deceased and those exhibited in offset and stating how much was allowed and how much disallowed in each case, together with the final balance, whether in favor of the creditor or the estate; and the same should be recorded and stand as the judgment of the court.

Sec. 313.17, Stats. 1925, provided that the court at the time prescribed therein should make an order or judgment for the payment of the debts of the deceased, in whole or in part, out of the assets then in the hands of the executor. Under the provisions of sec. 313.19, Stats. 1925, if there are

not sufficient assets in the hands of the executor a supplemental order or judgment may be entered.

Sec. 313.20, Stats. 1925, provides:

"Whenever an order or judgment shall have been made by the county court for the payment of the debts in whole or in part the executor or administrator, after the time fixed for the payment shall arise, shall be personally liable to the creditors for their debts or the dividend thereon as for his own debt; and he shall be liable on his bond, and the same may be put in action on the application of a creditor whose debt or dividend shall not be paid as above mentioned."

Sec. 313.13, Stats. 1925, provides:

"Within sixty days after the expiration of the time limited for creditors to present their claims every executor or administrator shall render an account of his administration to the county court, and such court shall thereupon direct the executor or administrator to proceed forthwith to the payment of the debts and to a final settlement of the estate in the manner prescribed by law unless it shall satisfactorily appear to the court: [Listing the grounds for extending the time for closing of the estate as provided in sec. 313.14]."

From the record in this case it appears that, from the time of the issuing of the letters testamentary down to the time when the executrix, Sara Robinson, was required to account, the administration of the estate came to a dead halt, with the exception that in 1927, upon a creditor's petition requiring the filing of an inventory and payment of claims, a partial inventory was filed, and along with it a statement of the amount received by her up to March 1, 1927, which partial inventory was filed March 1, 1927. It further appears, as stated in the statement of facts, that she treated the estate as her own with some exceptions already referred to. By order of the court she was required to resign, which she did on March 12, 1934, and the controversy in this case arises over

the accounting made and the attempt of the creditors to surcharge the account of Mrs. Robinson, as executrix.

It should be stated that from time to time Mrs. Robinson apparently conferred informally with the then county judge and partly upon his suggestion and partly upon her own motion, the administration of the estate was suspended in the hope that real-estate values would show some improvement, and that the claims of creditors could be paid in full with some overplus to the persons named as legatees in the will. No attempt was ever made to secure an extension of time under the provisions of secs. 313.13 and 313.14, Stats. 1925. No petition was ever filed and nothing was brought to the attention of the county court so far as the record discloses.

The issues raised in this case are of great importance, not only to the parties to this litigation, but to all persons who are obliged under our law to commit the administration of their estates to the county court. The office of executor is a very ancient one. It would be neither useful nor profitable to review the history of this office. At early common law the naming of an executor carried with it by implication a gift or donation to the executor of all the goods, chattels, credits, and personal estate remaining after the payment of the debts of the testator. By the terms of the statute, 11 George IV & 1 Will. IV, c. 40, the intention that the executor should take beneficially the residue undisposed of was required to appear upon the face of the will. Although special powers are frequently given by the will to the executor, broader in scope than those given an administrator, the general rule under modern law is that, apart from such special powers, the duties of executors and administrators with reference to the settlement of an estate are substantially the same. 11 R. C. L. p. 20, § 3, and cases cited. Speaking generally, an executor as well as an administrator is a trustee for the benefit of the beneficiaries named in the will as well as for the creditors of the deceased.

Under our law, the administration of an estate both under the will of the deceased and under letters of administration is a duty charged upon the county court. It is an active and not a passive function which the court assumes in these cases. While the county courts derive their powers from the statutes, they have plenary jurisdiction in all matters of administration, settlement, and distribution of estates of decedents, and their jurisdiction is in considerable part concurrent with that of courts of equity. *Tryon v. Farnsworth,* 30 Wis. 577; *Estate of Sipchen,* 180 Wis. 504, 193 N. W. 385.

In numerous instances, some of which have already been cited, the statutes charge the county court with the performance of certain duties upon its own motion. As in the case of other courts charged with the administration of trusts, the settler must depend very largely for the carrying out of his intention upon the vigilance and conscience of those charged with administering the jurisdiction of the court in which the trust is lodged. In this respect responsibility is somewhat divided between the county court and the executor or administrator, and in this as in some other cases a divided responsibility may and does occasionally produce deplorable results, a shining example of which is the case under consideration. In this case an estate in which the principal beneficiary was the executrix was allowed to remain wholly inactive for approximately ten years. An attempt of the creditors to arouse the court and the executrix to action was abortive. Apparently the court took no note of its responsibilities in the premises. Without proceeding in the manner prescribed by statute, the closing of the estate was delayed unconscionably. While the executrix in this case was not required to give bond because of the provision contained in the will, it is considered that sec. 310.14 nevertheless prescribed the duty which the executrix undertook to perform. By the terms of that statute she was required to ren-

der a true and just account of her trust to the county court within one year. This she never did nor undertook to do until after the order requiring her resignation was made.

The court in its opinion attempts to charge the creditors with laches. A consideration of the statutes already cited indicates that the duty of a creditor is performed when he files his claim against the estate in the manner prescribed by statute. See *Estate of Smith, post,* p. 640, 261 N. W. 730. Under the statute it then becomes the duty of the court to make a statement of the claims and, if objections are made, to determine any controversies arising thereon. The executor is charged with the duty of filing his account within the time limited after the time for hearing on claims has expired. There could hardly have been a more complete disregard of the provisions of the statutes which are intended to secure the reasonably prompt administration of estates than is exhibited in this case. It is not only the duty of the executrix to pay the claims when ordered, but under the law it is the duty of the executrix to file accounts and take such steps as are necessary to conclude the administration of the estate. It is considered that the failure of the executrix to perform her duty as required by statute made her liable as and for *devastavit* under the provisions of sec. 317.04, Stats. 1925.

The executrix urges that this liability cannot be asserted against her because of the amendment made by ch. 335, Laws of 1933. By that amendment it is provided:

"But no such liability [liability for *devastavit*] shall arise or accrue if one or more of the causes for delay mentioned in section 313.13 exists, and the administrator or executor has, in good faith, accordingly delayed the final settlement of the estate, or has, in good faith, for the purpose of preserving the assets of the estate, with the knowledge or approval of the court, continued the business of the decedent during the existence of such cause or causes."

Sec. 2 of the act provides: "The provisions of the act shall be retroactive and apply to all estates now pending in probate as well as to those hereafter instituted."

The provisions of sec. 2 make it plain that it was the intent and purpose of the legislature to make the act retroactive so far as it could lawfully do so.

The question now arises, What, if any, effect does this act of the legislature enacted in 1933 have upon a cause of action which accrued prior to the date of its enactment? A determination of this question requires a consideration of the nature of the right asserted. If the right is one created by the statute then it is subject to repeal and modification. *Beebe v. O'Brien,* 10 Wis. *481; *Kertschacke v. Ludwig,* 28 Wis. 430; *Dillon v. Linder,* 36 Wis. 344. If sec. 317.04 merely regulated or defined an already existing right, and a cause of action existed against the executor for the invasion of that right, then the right was vested, and it was not within the competency of the legislature to destroy it by subsequent legislative enactment. *Graham v. Chicago, M. & St. P. R. Co.* 53 Wis. 473, 10 N. W. 609; *Peninsular Lead & Color Works v. Union Oil & Paint Co.* 100 Wis. 488, 76 N. W. 359; *Pritchard v. Norton,* 106 U. S. 124, 132, 1 Sup. Ct. 102.

That a cause of action for *devastavit* existed at common law does not admit of doubt. Since the year 1671 definite requirements have been set up for an account of the assets of an estate by an administrator. *Carter v. Crawley* (1683), T. Raym, 83 Eng. Reports, Reprint 259, 3 Holdsworth, History of English Law, 586; *Pulliam v. Pulliam* (C. C.), 10 Fed. 23.

Sec. 317.04 merely codified the law upon the subject and made it more definite and certain. The right of action existed prior to the enactment of the statute, was a part of the common law, and therefore a part of the law of this state. *Spaulding v. Chicago & N. W. R. Co.* 30 Wis. 110.

In this connection some consideration should be given in an advisory way to the provisions of ch. 335. Questions may arise in this case as to what is meant by "the knowledge or approval of the court" in that chapter. The meaning of the

word "approval" seems clear. Something must have been submitted to the court and have been considered and approved by it. It is hardly conceivable that it was the intention of the legislature to limit the liability of an executor by reason of the fact that the judge of the court in some unofficial or informal way had obtained knowledge or had notice of certain facts. The county judge at a ball game or a farm auction is not the court. Information he receives in such an informal way is not knowledge of the court. What the court is required to approve is delay in the final settlement of the estate, based upon a finding that the executrix acted in good faith in what she did. The scope of the statute is such as to require some showing to the court not only with respect to the state of mind of the executrix but also with respect to the state of facts which warrant the exercise of the power by the court to extend the time of administration. So that two things must be found,—a state of facts which warrants an extension, and that the executor or administrator acted in good faith, in reliance upon the facts. It is stated in the briefs of counsel that the court in this case had certain information. We are unable to find anything in the record which indicates at any time prior to the hearing in 1934 that the court had any. The court must be informed in some of the ways laid down for bringing matters to the attention of the court. The county court is a court of record, and the method of procedure is well understood. So far as we can judge from the record, what happened were informal conversations between the executrix and the judge. These were not sufficient to warrant the exercise of the jurisdiction of the court to extend the time of administration or to excuse the performance by the executrix of clearly prescribed statutory duties.

In view of the fact that the accounting had in this case was based on a fundamental mistake of law, and the further fact that many of the other questions argued are not likely to be presented upon a new trial, we have not considered

other questions raised in briefs of counsel. The law is clear and plain and there should be no difficulty in following it. This case may work a great hardship upon the executrix, but that fact does not warrant this court in ignoring positive provisions of the law relating to the administration of estates. It is true that the responsibility for the situation under the claimed facts must be shared to some extent by the county court, but that does not excuse the executrix.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.