TOBY E SHERRY, Commissioner Office of Commissioner of Banking
You ask whether a bank violates section 69.24(1)(a), Stats., by photocopying a certified copy of a vital record for use by the Federal Reserve Bank.
Apparently the Federal Reserve Bank of Chicago recently modified its guidelines for processing all savings bond reissue transactions for seventh district institutions. If a party desires to redeem or reissue savings bonds after the death of a person, the party must provide a certified copy of the death certificate to the bank. The bank then will copy the death certificate and give the original back to that customer. While at the same time attesting that they saw a certified copy of the vital record, the bank then sends the uncertified copy to the Federal Reserve Bank who then will pay the bank.
Recent legislation has rendered moot the earlier opinion in 46 Op. Att'y Gen. 276 (1957) to which you refer in your letter. Section 69.24(1)(a) was repealed and recreated with the rest of subchapter I of chapter 69 under 1985 Wisconsin Act 315 and originally provided:
 Any person who does any of the following shall be fined not more than $10,000 or imprisoned not more than 2 years or both:
 (a) Prepares or issues any paper or film which purports to be, or carries the appearance of, an original or a copy of a vital record, certified or uncertified, except as provided under this subchapter and except for any hospital which issues any written announcement of the birth of a person to *Page 233 
the parents of the person if the announcement contains plain notice that the announcement is not for official use.
Section 69.24(1)(a) was enacted in apparent response to a substantial increase in the practice of obtaining and using false identification documents by manipulating the existing system. For example, it was easy for a person to procure a photocopy of a birth certificate from a source other than those discussed in chapter 69. This certificate, which might be accurate or already altered, could be altered to provide a new identity or other erroneous identifying information. The presence of a seal on the altered document gave it the appearance of a legitimate certificate. The Legislature obviously determined that this evil and its consequences could only be prevented by a strict measure which makes copying per se a criminal violation unless done under the authority of subchapter I of chapter 69.
The language of this statute as originally enacted is clear and unambiguous and, therefore, there is no need to resort to rules of construction or legislative history. State v. Gilbert,115 Wis.2d 371, 377, 340 N.W.2d 511 (1983); In re Estate of Bundy,81 Wis.2d 32, 40, 259 N.W.2d 701 (1977). Among other things, it prohibits the duplication of birth and death certificates as vital records unless the authority for duplication and method of duplication are provided for elsewhere under subchapter I of chapter 69. Banks and their employes are not among those authorized by subchapter I to duplicate vital records.
With the enactment of 1987 Wisconsin Act 247, effective April 21, 1988, another exception was added to the prohibition under section 69.24(1)(a) for vital records prepared or issued under section 610.50. Section 610.50 now provides:
 An insurer or an employe, agent or attorney of an insurer is not subject to s. 69.24(1)(a) for copying a certified copy of a vital record for the insurer's own internal administrative use in connection with the payment of insurance claims or benefits if the copy is marked "FOR ADMINISTRATIVE USE" and is retained in the files of the insurer or attorney. *Page 234 
In addition to an exception created under state law, a person or entity can benefit from a broader exemption under federal law. For example, employers are required to verify that an individual is not an unauthorized alien by examining documents establishing both employment authorization and identity of the individual including, among other things, some form of birth record.8 U.S.C.A. § 1324a(b)(1) (West Supp. 1989). Subparagraph (b)(4) of this section provides that "[n]otwithstanding any other provision of law, the person or entity may copy a document presented by an individual pursuant to this subsection and may retain the copy, but only (except as otherwise permitted under law) for the purpose of complying with the requirements of this subsection."
At present I know of no similar exception under the federal banking laws which would supersede the prohibition in section69.24(1)(a) under the Supremacy Clause of the United States Constitution. Although the state statute itself could be amended to exempt banks and their employes and agents as was accomplished for insurers, my position on the current law is consistent with the interpretation placed upon these relatively new provisions by the state registrar and the vital records personnel within the Department of Health and Social Services. When the Legislature empowers an agency to apply and enforce a statute, the agency's interpretation of the statute is entitled to great weight and a rational basis will sustain its interpretation. School Dist. ofDrummond v. WERC, 121 Wis.2d 126, 133, 358 N.W.2d 285 (1984). In addition to the clear and unambiguous language creating the prohibition, neither the agency nor I can find any federal or state law exempting banks, their employes or agents.
The Federal Reserve Bank guidelines are published by the Bureau of the Public Debt in a fiscal manual which apparently has no special force of law. As there is no special mention or treatment of these guidelines in any federal banking legislation or regulations, they are at most interpretive rules which do not operate to preempt state law. See State v. Amoco Oil Co., *Page 235 97 Wis.2d 226, 250, 293 N.W.2d 487 (1980). The very context in which the word "guidelines" is used in the materials accompanying your letter further indicates to me that these guidelines have no special or preemptive effect.
It should be noted that later subparagraphs under section69.24(1) require a showing of criminal intent, an element which is assumed under subparagraph (1)(a). Unless a person violated some later subparagraph, I see no reason why the certified copy could not be used during the entire process described in your recent letter. At present the fee collected by the state registrar or any local registrar for one certified copy of a death certificate is $5, but an additional certified copy of the same death certificate can be issued at the same time for only $2. Sec. 69.22(1)(a), Stats.
Although a prompt legislative change could permit Wisconsin banks to follow the Federal Reserve Bank guidelines, the Detroit branch of the Federal Reserve Bank of Chicago has provided a temporary solution for Wisconsin banks. When some Wisconsin banks discovered this statutory prohibition against copying certain records, those banks began sending the originals to the Detroit branch with a request that they be copied there and returned. Instead of engaging in this activity which would have been illegal in Wisconsin, the Detroit bank created a special exception for Wisconsin banks whereby they now send the original document to the Detroit branch rather than a photocopy. The underlying concern for costs incurred by the bank customers still exists, however, because under this special exception the Detroit branch now retains the original.
DJH:DPJ *Page 236